## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CSL SILICONES INC.,<br><br>Plaintiff,<br>v.<br><br>MIDSUN GROUP INC.,<br><br>Defendant. | 3:14-cv-01897 (CSH) |

## RULING ON MOTIONS TO DISMISS AND FOR JUDICIAL NOTICE

HAIGHT, Senior District Judge:

Plaintiff CSL Silicones Inc. ("CSL"), a Canadian corporation, brings this action against Defendant Midsun Group Inc. ("Midsun"), a Connecticut corporation, in connection with Defendant's allegedly improper use of two of Plaintiff's trademarks. Plaintiff alleges that Defendant markets and sells a silicone-coating product under a name similar to Plaintiff's chosen name for its silicone-coating product and that Defendant is thereby in violation of various provisions of the federal Lanham Act, 15 U.S.C. § 1051 *et. seq*, as well as Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110. Defendant has filed a motion to dismiss each of Plaintiff's causes of action as either time-barred or precluded by *res judicata*, [Doc. 10], and, in furtherance of its argument, moves this Court to take judicial notice of relevant proceedings before the United States Patent and Trademark Office ("USPTO"), [Doc. 11]. Plaintiff objects to both motions [Doc. 19], and Defendant has filed a single reply, [Doc. 20]. The Court held a hearing on the motions on January 8, 2016. Doc. 56. This Ruling resolves them both.

## I.     Background

### A.     Allegations in the Complaint

CSL develops and sells silicone-based coatings for various applications, earning a status as a "global leader" in the field.  Compl. [Doc. 1] ¶ 6.  Relevant here, it sells two such coatings, both of which are "room temperature vulcanizing silicone coating" products.  *Id.* ¶¶ 7-8.  One, marketed and sold with the mark "570," is used largely to coat and thereby protect high voltage insulators, such as overhead power lines.  *Id.* ¶ 7.  The other, carrying the mark "579," is used largely to protect against corrosion of various steel products.  *Id.* ¶ 8.  CSL has continuously marketed and sold its product under the mark "570" from December 31, 1991 to the present, and "579" from 1995 to the present.  *Id.* ¶¶ 7-8.  CSL owns a Trademark Application in "570," and owns, as of May 14, 2002, an incontestable Trademark Registration in "579."  *Id.* ¶¶ 9-10.

The current dispute centers on Midsun's sale of two similar products that both serve the "same general function" as CSL's "570" and "579."  *Id.* ¶¶ 14-15.  Midsun markets and sells the first as "570" or "Midsun 570," and the other as "579" or "Sliprocoat 579."  *Id.*  Both Midsun products compete directly with CSL's versions of "570" and "579," selling "to the same customers and within the same channel[s] of trade."  *Id.* ¶¶ 14-15.  At the core of its Complaint, CSL alleges that the use of these marks is "likely to cause confusion, mistake or deception as to the source or origin of [Midsun's] products among purchasers."  *Id.* ¶ 17.

Use of the marks is without CSL's authorization or permission.  *Id.* ¶¶ 14-15.  Nevertheless, Midsun currently seeks registration of its "570" and "Midsun 570" marks with the USPTO, filing trademark applications on October 19, 2012 and June 17, 2014, respectively.  *Id.* ¶ 19.  CSL filed a Trademark Opposition Proceeding with respect to Midsun's application for the "570" mark, and,

as of the filing of the complaint on December 17, 2014, had an intent to file such an opposition proceeding with respect to the "Midsun 570" mark as soon as it would be permitted. *Id.* ¶ 20.

Midsun is well aware that these marks are CSL's property, an indisputable fact given that Midsun was an authorized distributor of CSL's "570" and "579" products from 1995 until 1999, when CSL terminated the relationship. *Id.* ¶¶ 12-13. Midsun was notified in writing by CSL of CSL's trademark rights in the two marks, and knows that it did not have the right to continue use of the marks after termination of the distributorship relationship. *Id.* ¶ 23. In fact, Midsun's actions "have been malicious, deliberate, willful, intentional and in bad faith, with full knowledge and conscious disregard of CSL's rights." *Id.*

In light of the above, CSL brings seven causes of action against Midsun: two claims of unfair competition under Section 1125(a) of the Lanham Act (Count I as to "570" and Count VI as to "579"); two claims of violations of CUTPA (Count II as to "570" and Count VII as to "579"); two claims for refusal of Midsun's trademark registration applications under Section 1119 of the Lanham Act (Count III as to Defendant's proposed "570" mark and Count IV as to Defendant's proposed "Midsun 570" mark); and one claim (Count V) for trademark infringement under Section 1114 of the Lanham Act (with respect to "579").

### B.    Facts Defendant Asks The Court to Judicially Notice

Plaintiff's twelve-page complaint—six pages of which simply list out Plaintiff's causes of action and requested relief—omits nearly all of the details of the extensive history of CSL and Midsun's relationship, both as business partners and, subsequently, as foes in a bitter and lengthy trademark conflict. Midsun views this documented history as integral to an understanding of this dispute, and, moreover, that it affirmatively demonstrates that Plaintiff's claims are either untimely,

precluded, or both.  Midsun therefore asks the Court to take judicial notice and consider documents

comprising the record in two USPTO trademark dispute actions between the parties.  Specifically,

Midsun submits documents from the record in those proceedings that establish the following:

- On January 3, 2000, Midsun filed an application with the USPTO for trademark registration of "MIDSUN 570."  Doc. 10-1 Ex. A.

- On March 19, 2001, Midsun filed a "Statement of Use Under 37 CFR 2.88" with the USPTO with respect to "MIDSUN 570."  *Id.* Ex. B.

- On November 13, 2001, the USPTO issued to Midsun trademark Registration No. 2,508,019 as to "MIDSUN 570."  *Id.* Ex. C.

- On December 9, 2002, CSL filed with the USPTO a Petition to Cancel the "MIDSUN 570" trademark.  *Id.* Ex. D.

- On June 15, 2005, CSL withdrew its Petition to Cancel the "MIDSUN 570" trademark.  *Id.* Ex. E.

- On June 28, 2005, the USPTO's Trademark Trial and Appeal Board ("TTAB") dismissed CSL's Petition to Cancel the "MIDSUN 570" trademark with prejudice.  *Id.* Ex. F.

- On July 8, 2008, the "MIDSUN 570" trademark was cancelled.  *Id.* Ex. G.[1]

- In the trademark opposition proceeding as to "570" referenced in Plaintiff's complaint, CSL's President and CEO, Faisal Huda, submitted a sworn affidavit in support of CSL's motion for summary judgment.  *Id.* Ex. H.

- On June 14, 2006, in a Notice of Abandonment, the USPTO declared that CSL's "570" application was abandoned on May 17, 2006.  *Id.* Ex. I.

---

[1]  At oral argument, Midsun's counsel attempted to explain why the "MIDSUN 570" mark was cancelled, stating essentially that because Midsun had a common law trademark "it no longer needed the [appellation], so to speak, . . . of having registered."  Transcript of January 8, 2016 Proceedings ("Tr.") 11.  This downplay of the significance of registration is curious, in part because it begs the question as to why Midsun then felt the need in 2014 to reapply for its "MIDSUN 570" mark.  *See* Doc. 10-1 Ex. J.

- On June 17, 2014, Midsun filed a trademark application with respect to "MIDSUN 570." *Id.* Ex. J.

- On January 6, 2015, the mark "MIDSUN 570" was published for opposition. *Id.* Ex. K.

- On March 12, 2015, Midsun filed a motion seeking the dismissal of CSL's claims in the opposition proceeding CSL brought with the USPTO as to the mark "MIDSUN 570." *Id.* Ex. L.[2]

## II.    Motion for Judicial Notice [Doc. 11]

Midsun moves the Court to take judicial notice of the records identified immediately above with respect to the parties' proceedings in front of the USPTO.  This is plainly proper.  *See*, *e.g.*, *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 n.3 (Fed. Cir. 1990); *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp.2d 283, 287 n.3 (S.D.N.Y. 2010).  Initially, CSL objected to the motion to the extent it asked "the Court to accept, as part of this judicial notice, that the arguments and allegations made in those documents are true."  Doc. 19, at 21.  However, CSL has tempered its objection.  At the hearing, it seemed to accept the propriety of the Court noticing documents that simply establish that certain events central to the Complaint occurred.  *See* Tr. 51. That is what the Court will do.  *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings" (internal quotation omitted)).  CSL's fears that the Court will accept the content of the noticed documents as truth are unfounded.  Nor is it what Midsun asks for.  Midsun aims to present the Court with the record documents of an administrative dispute that is centrally

---

[2]  According to Defendant, the USPTO proceeding has been suspended pending the outcome of this litigation.  Doc. 10, at 7; Tr. 12.

relevant to CSL's claims but as to which CSL made little to no mention in its pleading.  The Court grants Defendant's motion for judicial notice and will give whatever level of deference to those documents that may be warranted.

### III.   Motion to Dismiss [Doc. 10]

Midsun moves pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of each of CSL's seven causes of action.  It argues that Counts II and VII are barred by CUTPA's three-year statute of limitations, and that all remaining counts brought under the Lanham Act are barred by the equitable doctrine of laches.  Doc. 10, at 8-12.  Midsun also argues that Count VII—for refusal of the trademark application for "MIDSUN 570"—is barred pursuant to the principle of *res judicata*.  *Id.* at 12-13.  The Court addresses these arguments in turn.

### A.   Statute of Limitations

Midsun moves to dismiss Plaintiff's CUTPA claims (Counts II and VII) as barred by CUTPA's statute of limitations, which states that a claim "may not be brought more than three years after the occurrence of a violation of th[e] chapter."  C.G.S. § 42-110g(f).  CUTPA is an "occurrence" (as opposed to a "discovery") statute, meaning that the limitations period accrues when the violative conduct occurs rather than upon the manifestation of the concomitant harm from that conduct.  *See Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212-13 (1988).  Midsun thereby argues that because the first alleged instances of trademark infringement occurred many years ago, CSL's CUTPA claims are clearly time-barred.

Plaintiff acknowledges that CUTPA is an "occurrence" statute and that Midsun's first infringing act of one of its marks occurred more than fifteen years ago.  Doc. 19, at 8-10.  Plaintiff even accepts that much of its CUTPA claims are thereby time-barred.  *Id.*  However, it argues that

the statute of limitations is not a complete bar to recovery because "[t]rademark infringement is a continuing tort" in which "[e]ach act of infringement begins a new limitations period." *Id.* at 8. CSL therefore argues for what is sometimes known as a "separate-accrual" rule. Application of such a rule, CSL argues, allows it to recover under CUTPA for instances of trademark infringement that took place within three years of the filing of its complaint. *See id.* at 9. For its part, Midsun vehemently disagrees that CUTPA is subject to a "separate-accrual" rule for trademark-based claims. Doc. 20, at 4-6. It argues that, as an occurrence statute, CUTPA's limitations period begins only once, at the first allegedly infringing act. *See* Tr. 13-19

The present dispute thus turns on whether trademark-based CUTPA claims are subject to a "separate-accrual" rule. In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), the Supreme Court explained the effect of a "separate-accrual" rule in relation to the federal Copyright Act. In fact, the Court applied there the precise "separate-accrual" rule that CSL seeks as to CUTPA:

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period. *See Stone v. Williams*, 970 F.2d 1043, 1049 (C.A.2 1992).

*Id.* at 1969 (footnotes omitted).

Although seemingly apposite to the case at bar, *Petrella* is not directly on point, principally because the Supreme Court has long cautioned against equating copyright law with trademark law.[3]

---

[3] *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984) ("We have consistently rejected the proposition that a similar kinship [as between copyright law and patent law] exists between copyright law and trademark law. . . . Given the[ir] fundamental differences . . . in this copyright case we do not look to the standard . . . crafted for application in

Nevertheless, the present dispute can be narrowed to the following: are CUTPA claims sounding in trademark subject to a "separate-accrual" rule analogous to that applicable to claims under the Copyright Act?

CSL posits this to be an issue of first impression in Connecticut, while arguing that to hold that trademark claims are not subject to separate accrual would "make Connecticut somewhat unique." Tr. 57-61. The Court acknowledges that a significant number of other courts outside of Connecticut facing this question have endorsed Plaintiff's proffered theory. Specifically, a number of other district courts and circuits other than the Second have held that claims sounding in trademark accrue for the purpose of a statute of limitations as to each infringing use of the mark, and that although claims as to infringing uses occurring outside the statutory period are untimely, claims as to those uses occurring within the applicable period are timely.[4]

---

trademark cases. . . .); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) (discussing "the fundamental error of supposing that a trade-mark right is a right in gross or at large, like a statutory copyright or a patent for an invention, to either of which, in truth, it has little or no analogy"); *see also Yeager v. Fort Knox Sec. Prods.*, 602 F. App'x 423, 430 (10th Cir. 2015) ("By its own terms *Petrella*'s holding does not apply to the Lanham Act").

[4] *See, e.g.*, *Derrick Mfg. Corp. v. Southwest Wire Cloth, Inc.*, 934 F. Supp. 796, 808 (S.D. Tex. 1996) (applying Texas' unfair competition law and holding that because "each [trademark] violation creates a separate cause of action . . . [c]laims for violations within the limitations period will be allowed, but those violations outside the limitations period are time-barred" (internal quotation omitted)); *Fourth Toro Family Ltd. P'ship v. PV Bakery, Inc.*, 88 F. Supp.2d 188, 196 (S.D.N.Y. 2000) ("First, as to limitations, defendant's use of [plaintiff's trademark] . . . was, if wrongful, a continuing tort. As such, plaintiff would have the right to sue for damages suffered within the six-year [statutory] period preceding the filing of suit."); *Bad Boy, Inc. v. Bad Boy Enters., Inc.*, 2009 WL 4251022, at *5 (E.D. Ark. Nov. 24, 2009) (denying motion for summary judgment on statute of limitations grounds because "the statute of limitations is not a complete defense to actions arising from trademark infringement because infringement is a continuing wrong" and the movant "offer[ed] no evidence that [plaintiff's] claims for common law trademark infringement and unfair competition arise solely from acts that occurred outside of the statutory period"); *Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp.2d 152, 156 (D.D.C. 2007) ("Because plaintiffs allege that APE continues to use the

CSL then argues that Connecticut courts would follow suit if presented with this question, proffering in support *Broadway Theatre Corp. v. Buena Vista Pictures Distributors*, 2002 WL 32502100 (D. Conn. Sept. 19, 2002). In *Broadway Theatre*, a movie theater alleged certain motion picture distributors were violating CUTPA through a long-running practice of licensing certain "first-run" films exclusively to its competitors. There, like here, the plaintiff "base[d] its claim only on those licenses entered into during the statutory period," while the defendants argued that CUTPA's limitations period accrued when they first began issuing licenses decades earlier. *Id.* at *6. Ultimately, Judge Underhill endorsed plaintiff's theory as to this issue:

> Because each license constituted a discrete alleged CUTPA violation, Broadway's claims based on license agreements entered into within the three years prior to the filing of the complaint are not barred. To conclude otherwise would insulate standardized or repeated unfair trade practices from challenge once they had been instituted for three years. Such a result would run counter to CUTPA's broad mandate.

*Id. Broadway Theatre* is therefore relevant to the extent it held that a CUTPA claim can accrue

---

contested trademark to this day . . . , plaintiffs' state law trademark infringement claims are not time-barred [pursuant to the applicable state statute of limitations]"); *Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *4 (N.D. Cal. Aug. 17, 2004) ("The Ninth Circuit has held . . . that trademark infringement is a continuing wrong, and the statute of limitations is no bar except as to damages beyond the statutory period. . . . Consequently, although [plaintiff's] claims for damages based on trademark infringement of which [plaintiff] was aware prior to June 13, 2000 are time-barred, the statute of limitations does not preclude [plaintiff] from asserting a claim for trademark infringement with respect to claims accruing or violations continuing after that date"); *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 2008 WL 913279, at *2 (N.D. Cal. Apr. 3, 2008) ("Defendants' alleged [trademark] infringement activity is ongoing. . . . Therefore, even assuming a statute of limitations defense may bar some portion of Plaintiff's trademark infringement claim, Plaintiff would still be entitled to pursue damages based on the infringement activity that occurred within the statute of limitations period."); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001) ("This well established rule recognizes that the [copyright] statute of limitations does not shield the defendant from liability for wrongful acts actually committed during the limitations period, and its rationale applies equally to trademark infringement claims brought under the Lanham Act.").

separately for each discrete illegal act that forms the basis of a CUTPA claim.  I agree with Judge Underhill that the statute's "broad mandate" generally allows for such.  *Id.*; *see also Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 492 (1995) ("[t]he entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit" (internal quotation omitted)).  I also note that incorporating a "separate-accrual" rule does not conflict with CUTPA's status as an "occurrence statute."  This is because separate-accrual has nothing to say about what may trigger a limitations period.  For instance, "separate-accrual" rules have been applied both to "occurrence statutes,"[5] and "discovery statutes."[6]  CSL also could have pointed to *Rickel v. Komaromi*, 73 A.3d 851, 857-63 (Conn.App. 2013), for distinct yet analogous support, in which the Connecticut Appellate Court adopted a separate accrual rule for certain instances of trespass and nuisance where the illegal conduct was continuous and abatable rather than permanent.

However, that Connecticut endorses a "separate-accrual" rule for certain causes of action—including, generally, as to CUTPA—is not sufficient to endorse CSL's theory here, a theory that depends on whether Connecticut law deems *trademark infringement* claims to accrue separately on each infringing use.  On this question, *Broadway* and *Rickel* do not have precedential value.

For its part, Defendant disagrees that this Court writes on a blank slate.  It argues that two federal cases addressing trademark based CUTPA claims have "directly dealt with the question at hand in this case," [Doc. 20], at 3, and have resolved them in ways that foreclose CSL's theory:

---

[5]  *Petrella*, 134 S. Ct. at 1969 (applying a "separate-accrual" rule with respect to the Copyright Act, an "occurrence statute," such that "[e]ach wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs").

[6]  *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) ("[W]e today hold that civil RICO actions are subject to a rule of separate accrual.  Under this rule, each time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred.").

*Argus Research Group, Inc. v. Argus Media, Inc.*, 562 F. Supp.2d 260 (D. Conn. 2008), and *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp.2d 9 (D. Conn. 2009), *aff'd*, 410 F. App'x 362 (2d Cir. 2010). The centrality of these cases to the theories supporting Defendant's motion cannot be overstated. In fact, counsel for Midsun went so far as "to almost concede that our case does depend largely on the interpretation of *Argus* and *RBC*." Tr. 20 ("I'm willing to make that concession.").

It is not clear that *Argus* lends the dispositive support Defendant envisions.[7] Moreover, as an unappealed district court ruling, I would not be bound by it to the extent it does.

The same cannot be said, however, about *RBC*. There, plaintiff brought, *inter alia*, CUTPA claims sounding in trademark, which the defendant argued were untimely in its summary judgment motion before the trial court. In opposition to this timeliness argument, the plaintiff argued only that the CUTPA statute of limitations should be tolled pursuant to the equitable continuing course of conduct doctrine. No. 06-cv-01380, Doc. 155, at 22. It did not argue for a "separate-accrual" rule. Not surprisingly, the district court's CUTPA timeliness analysis was therefore limited only to whether or not plaintiff was entitled to equitable tolling. 676 F. Supp.2d at 34-35. Judge Bryant answered that in the negative and thereby rejected plaintiff's timeliness argument and dismissed its

---

[7] Any rejection of a "separate-accrual" rule in *Argus* (to the extent the case could be read as such at all) is at-best only implicit. The *Argus* plaintiff never remotely argued that its CUTPA claim accrued on each occurrence of infringement. Rather, the parties disputed as to what the singular "occurrence" was that triggered the limitations period. The Defendant argued "that the relevant occurrence [was] the first use of "ARGUS" or "ARGUS MEDIA" as a trademark," which took place outside the limitations period. 562 F. Supp.2d at 280. The Plaintiff, "on the other hand, argue[d] that the relevant occurrence [was defendant's] re-branding campaign, which did not begin until 2004, i.e., within the statute of limitations period." *Id.* Judge Kravitz simply disagreed with Plaintiff's characterization of its claim, holding that "[a]t bottom, Argus Research is contesting Argus Media's *use* of the . . . marks, not the re-branding campaign itself (which merely publicized Argus Media's use of those marks)." *Id.* (emphasis in original).

CUTPA claims on that basis alone. *Id.* Therefore, standing by itself, the district court decision in *RBC* does not provide strong support for Defendant's argument. As with *Argus*, a "separate-accrual" rule simply was not at issue.

However, the *RBC* plaintiff appealed the trial court decision, and, in doing so, changed course. It raised the argument that Judge Bryant erred by not construing its trademark-based CUTPA claims to accrue as to each instance of infringement. No. 10-383, Br. of Appellants, 2010 WL 2584182, at *46. In other words, plaintiff-appellant asked the Second Circuit to endorse a "separate-accrual" rule as to CUTPA claims, including those sounding in trademark. In fact, its argument sounds as if it could have been written by CSL itself:

> [T]he court erred in concluding that all of [plaintiff's] state law claims were barred. . . . On the contrary, when [plaintiff] filed its complaint in 2006, it was entitled to sue for any infringing act perpetrated by [defendant] within three years before the filing that gave rise to a CUTPA . . . claim—that is, any act between 2003 and 2006. . . . Because acts of [copyright and trademark] infringement are separate and distinct for purposes of assessing when a cause of action arises, infringing conduct that may have occurred outside a given limitations period does nothing to affect the right of a plaintiff to sue for infringing acts that occur within the limitations period.

*Id*. To the dismay of the *RBC* plaintiff-appellant—and, by extension, to CSL here—the Second Circuit then squarely rejected this argument:

> [Plaintiff-appellant] insists that each allegedly infringing action creates a new three-year limitations period and so its claims are not time-barred insofar as they reference allegedly infringing actions taken by [defendant-appellee] within three years of [plaintiff-appellant's] 2006 complaint.
>
> [Plaintiff-appellant] fails to identify a single case applying Connecticut law in the manner it suggests to the causes of action at issue in this case. Nor could it. In a closely analogous case addressing a counterclaim alleging ongoing violations of the Connecticut Trademark Statute, fraud, unfair trade practices, tortious

> interference, and breach of contract, a Connecticut state court held that "to allow the defendants to now come forward and pursue these allegations . . . after knowing of the violations for almost a decade would violate the purpose of a statute of limitations, which 'is to prevent the unexpected enforcement of stale claims.'" . . . The same is certainly true here.

410 F. App'x 362, 366-67 (2d Cir. 2010) (quoting *S. Pope Inc. v. Pope Exterminating*, 1993 WL 489708, at *3 (Conn.Super. Nov. 17, 1993), and citing *Argus*, 562 F. Supp. 2d at 279-81).

Of note, the *RBC* plaintiff-appellant premised its "separate-accrual" argument to the Court of Appeals on the non-trademark cases *Broadway Theatre* and *Stone* (the Second Circuit case relied on in *Petrella* to hold that the Copyright Act limitations period is subject to a "separate-accrual" rule), 2010 WL 2584182, at *46—an argument which was not credited by the Second Circuit. In short, the Second Circuit was asked in *RBC* whether the "separate-accrual" rules identified in *Broadway Theatre* and *Petrella*/*Stone* apply to CUTPA claims sounding in trademark. It said no.

Just as instructive are the decisions the *RBC* panel did rely on, namely, two trademark cases heavily relied on by Midsun here: *S. Pope Inc.* and *Argus*. CSL itself posits that these cases lend support to Defendant's position that a "separate-accrual" rule is unavailable in this context. In fact, at oral argument, CSL's counsel expressly acknowledged such as to *S. Pope Inc.*, agreeing with defense counsel's description of the case's holding and arguing instead that it simply is not binding "because it was a trial court case." Tr. 58-59. Relatedly, rather than distinguishing *Argus*, CSL argued more than once in its briefing that the *Argus* court "misapplied" Connecticut law. Doc. 19, at 10. Clearly, the Second Circuit disagrees with CSL's position as to the impact of *S. Pope Inc.* and *Argus* to the question at hand.

Further, CSL's argument that *RBC* is distinguishable on its facts because the defendant there "innocent[ly]," rather then intentionally, infringed, is of no moment. *See* Doc. 19, at 10. Outside

-13-

of an equitable tolling doctrine (such as fraudulent concealment or continuing course of conduct), which CSL does not allege here, a statute of limitations, unlike the doctrine of laches, is unconcerned with equities or the defendant's intent.

The Second Circuit's holding in *RBC* is therefore unmistakably clear:  CUTPA claims sounding in trademark do not accrue as to each use of a plaintiff's mark, especially where the plaintiff had previous knowledge of the earlier infringement.  Despite the line of authority from other courts, Connecticut's embrace of a "separate-accrual" rule elsewhere, and the Supreme Court's analogous directive in *Petrella*, I am constrained to follow the Second Circuit's clearly on-point directive.[8]  In sum, irrespective of how I would address the question in the first instance, I, as a district judge sitting in the Second Circuit, conclude that CUTPA claims sounding in trademark are not subject to a "separate-accrual" rule.

_____

[8]  The Court is aware that *RBC* was issued as a summary order, which, according to the Second Circuit's local rules, "do not have precedential effect."  Local Rule 32.1.1(a). Nevertheless, it would take a certain *chutzpah* to issue a ruling directly contrary to a ruling from the Court of Appeals where the panel addressed and resolved the precise legal question at hand. In fact, the Second Circuit itself has repeatedly directed that "[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) (internal citation omitted); *U.S. v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (same); *U.S. v. Irving*, 554 F.3d 64, 78 (2d Cir. 2009) (same); *Granite St. Ins. Co. v. Clearwater Ins. Co.*, 599 F. App'x 16, 17 n.3 (2d Cir. 2015) (same); *see also U.S. v. Tejada*, 824 F. Supp.2d 473, 475 (S.D.N.Y. 2010) ("It would demand an expression of utmost temerity, if not robust arrogance, for a district court to flout germane guidance of a Circuit Court panel [issued through a summary order] and to substitute its own conclusion of law").  In *Jackler*, the court explained that "the rationale underlying the Rule is that such orders, being summary, frequently do not set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make our summary ruling applicable to the new case." 658 F.3d at 245. Implicit in that rationale is that summary orders should be given more weight, where, as here, they address a question of law.  The Court will therefore follow the guidance of *RBC* as to the accrual of CUTPA claims sounding in trademark.  CSL will of course be free ultimately to ask the Second Circuit to reconsider its holding.

CSL's CUTPA claim as to "570" (Count II) is thereby clearly time-barred.  Not only does CSL acknowledge that Midsun was using the "570" mark at least by 1999, [Doc. 19], at 1, 4, Midsun filed a Statement of Use of the mark with the USPTO in 2001, [Doc. 10-1 Ex. B].

However, because the record is entirely silent as to the date of Midsun's first use of "579,"[9] the Court cannot now dismiss CSL's CUTPA claim as to that mark.  *See Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, 2012 WL 162361, at *3 (D. Conn. Jan. 19, 2012) ("Where, as here, a complaint does not demonstrate facial infirmity with respect to the statute of limitations, a motion to dismiss on this ground must fail.").  Therefore, CSL's CUTPA claim as to "579" (Count VII) will be subject to dismissal on timeliness grounds only if and when discovery determines that Midsun first used the mark prior to December 17, 2011.

*     *     *

Prior to addressing the timeliness of CSL's other claims, the Court must address the argument raised by Midsun's counsel at oral argument that "all Lanham Act/laches type of arguments are subsumed by . . . CUTPA."  Tr. 72.  Defendant seems to argue that the adjudication of the CUTPA statute of limitations issue resolves the timeliness issues as to *all* of Plaintiff's claims, including those brought under the federal Lanham Act.  If true, the impact of the Court's holding above would be that all claims as to "570" are time-barred.  However, Midsun proffers a faulty premise.  As elaborated upon below, while "analogous statutes of limitation [are] an important determinant in the application of a laches defense," *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996), a court

---

[9]  The Complaint makes no allegation as to the date of Midsun's first use of either mark, and none of the documents Midsun asks the Court to judicially notice relate to "579."  Further, Midsun's brief does not refer to Midsun's first use of the "579" mark, the relevant occurrence for statute of limitations purposes; rather, it points only to when Defendant first gained knowledge of CSL's rights as to "579," [Doc. 10], at 9, an irrelevant date for present purposes.

does not superimpose a statute of limitations upon an equitable statutory scheme, like the Lanham Act, that contains none.  Put differently, "'[s]tate statutes of limitations [do] not apply to a federal cause of action lying only in equity, because the principles of federal equity are hostile to the 'mechanical rules' of statutes of limitations.'" *Brennan v. Nassau Cnty*, 352 F.3d 60, 63 (2d Cir. 2003) (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 162 (1983)); *see also Le Gate v. Panamolga*, 221 F.2d 689, 691 (2d Cir. 1955) ("We are not disposed however to mechanically apply the analogous statute of limitations without regard to the equities.").

Defendant's proffered approach would thereby obviate federal congressional intent in passing the Lanham Act, which Congress expressly left subject to equitable considerations.  *See Warner Vision Enter. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) ("the stated intent of Congress [was] that the Lanham Act would be governed by equitable principles, which Congress described as 'the core of U.S. trademark jurisprudence'" (quoting S. Rep. No. 515, 100th Cong., 2d Sess. 30 (1988))).  Defendant's view that a limitations period within a state's unfair competition statute may "subsume" such equitable analysis would directly undermine that congressional intent. It is therefore unsurprising that courts assessing complaints that contain causes of action under both CUTPA and the Lanham Act, such as the one at bar, conduct separate and independent analyses as to the statute of limitations (for the CUTPA claims) and laches (for the Lanham Act claims). *See*, *e.g.*, *Argus*, 562 F. Supp. 2d 260; *RBC*, 676 F. Supp. 2d 9.  The Court will do the same here.

### B.    Laches

Midsun argues that "all remaining counts are barred by laches," and thereby moves to dismiss separately on this ground as to Counts I, and III-VI. Doc. 10, at 9.  "Laches is an equitable defense based on the . . . maxim *vigilantibus non dormientibus aequitas subvenit* (equity aids the vigilant,

not those who sleep on their rights)," and thus "bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997) (internal quotations omitted). As an equitable defense, it technically operates irrespective of a statute of limitations; however,"analogous statutes of limitation remain an important determinant." *Conopco, Inc.*, 95 F.3d at 191. Specifically,

> [P]rior to the running of the most closely analogous state statute of limitations there is no presumption of laches and the burden remains on the defendant to prove the defense. Alternatively, once the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not to be applied in the case.

*Id.* Generally, courts rely on Connecticut's three-year statute of limitations for fraud claims in determining whether the presumption of laches applies in trademark disputes. *See, e.g.*, *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F. Supp.3d 85, 101 (D. Conn. 2014).

In line with these principles, Defendant argues that a presumption of laches applies here because CSL was aware of Midsun's use of its marks well before December 17, 2011. Accordingly, it argues that "the burden of proof shifts to the plaintiff, who must show that the bar does not apply." Doc. 10, at 10. Plaintiff attempts to do just that by arguing that an intentional infringer, such as Midsun, is categorically barred from invoking the defense of laches. Doc. 19, at 12 (citing, *inter alia*, *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000)).

In *Hermes*, the Second Circuit laid out the long-standing principle that "laches is not a defense . . . when the defendant intended the infringement." 219 F.3d at 107 (internal quotation marks omitted). The rule that an intentional infringer cannot invoke a laches defense stems from the principle that a "party asserting an equitable defense such as laches must demonstrate that it comes

before the court with clean hands." *Eppendorf-Netheler-Hinz GMBH v. Nat'l Scientific Supply Co.*, 14 F. App'x 102, 105 (2d Cir. 2001).  The application of that principle to bar timeliness defenses by intentional intellectual property infringers is well-established.  For example, in *My-T Fine Corp. v. Samuels*, 69 F.2d 76 (2d Cir. 1934), the Court of Appeals was tasked with determining whether Velmo, a manufacturer of the ingredients essential to make pudding, infringed on the rights of its direct competitor, My-T-Fine, when it designed its box to look substantially similar to the plaintiff's. Judge Learned Hand, writing for the panel, rejected Velmo's timeliness defense, stating that:

> The delay of two years before beginning suit does not seem to us of importance, even upon this application.  There is indeed some question as to just when the plaintiff learned of the defendants' second box; but we see nothing in that to give us pause; we are ready to assume that it learned of its appearance at once.  Again, were it not for the intent to trade unfairly, we might hesitate, but advantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed.  Concededly nothing short of abandonment would be a defense at final hearing. . . . [C]onsidering the origin of the wrong here, we do not think that a delay of two years is a defense.

*Id.* at 77-78.  This reasoning is applied in contemporary trademark disputes brought under the Lanham Act.  *See Hermes*, 219 F.3d at 107 ("Appellees thus intentionally traded off the Hermes name and protected products and should not have been entitled to invoke the doctrine of laches as a defense against Hermes' claims"); *Argus*, 562 F. Supp.2d at 273 (the "good-faith component of the laches doctrine denies the benefits of laches to any defendant that has intentionally infringed on the plaintiff's mark").  Moreover, "intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities." *Hermes*, 562 F. Supp.2d at 107.

CSL clearly alleges that Midsun's use of its marks was and is intentional.  Specifically, it

alleges that Midsun had an intimate knowledge of the marks at issue given the parties' distribution relationship as to those marks dating back to 1995. It then claims that Midsun has used those same marks ever since in a manner that has "been malicious, deliberate, willful, intentional and in bad faith [and] with full knowledge and conscious disregard of CSL's rights." Doc. 1, at 5. This is simply not a case where the defendant may claim that the plaintiff has alleged an inadvertent use of its mark. Notably, Midsun does not do so.[10] Accordingly, because CSL sufficiently alleged that Midsun intentionally infringed on its marks, Midsun's motion to dismiss CSL's Lanham Act claims pursuant to the doctrine of laches must be denied.[11]

**C.    *Res Judicata***

Through Count IV of its Complaint, brought pursuant to 15 U.S.C. § 1119, CSL seeks an order of refusal of Midsun's trademark application as to "MIDSUN 570." Section 1119 gives this Court the power to order the refusal of a trademark. It provides that:

> In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.

Midsun moves to dismiss this cause of action on the grounds that it is precluded pursuant to

---

[10]  Midsun twice declined its opportunity to respond directly to Plaintiff's intentional infringement argument. In its reply brief, Midsun expressly limited its argument to the CUTPA statute of limitations issue and "reserve[d] its argument in favor of laches . . . for the hearing." Doc. 20, at 3. At that hearing, the Court gave Midsun's counsel the opportunity to further develop its laches argument. Tr. 72-73. It chose not to, instead relying on "[o]ur position . . . that . . . all Lanham Act/laches type of arguments are subsumed by . . . CUTPA." *Id.* As discussed above, Defendant holds that position in error, and has thereby left Plaintiff's intentional infringement argument entirely unrebutted.

[11]  I also note that laches is a fact-based inquiry and therefore courts rarely resolve the issue at the pleading stage. *See, e.g.*, *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994) ("[t]he equitable nature of laches necessarily requires that the resolution be based on the circumstances peculiar to each case . . . The inquiry is a factual one.").

*res judicata*.  Doc. 10, at 12-13.  As used in its modern form, the term *res judicata* encompasses two related but distinct doctrines:  claim preclusion and issue preclusion.  Claim preclusion provides that a litigant may only sue once on a singular cause of action, whereas issue preclusion, a narrower principle, prohibits re-litigation of issues that have been previously adjudicated on their merits.

Midsun's argument rests on a theory of claim preclusion,[12] and proceeds as follows:  In 2002, CSL filed with the TTAB a Petition to Cancel the registration of the "MIDSUN 570" mark.  In 2005, the TTAB dismissed with prejudice that challenge following CSL's withdrawal of its cancellation petition.  Because CSL seeks the same relief as to the same conduct as it sought before the TTAB —cancellation of Midsun's registration of its "MIDSUN 570" mark—CSL is barred from re-litigating that claim here.  The Court addresses this argument now.

Claim preclusion operates to bar a second trademark proceeding where: "(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000).

There can be no dispute as to the first two elements.  The initial TTAB proceeding involved

_____

[12]  Midsun relied only on claim preclusion, rather than issue preclusion, in its motion to dismiss filed on March 30, 2015.  It then filed an unsolicited "supplemental brief" on April 9, 2015, in which it raised an issue preclusion argument premised on the Supreme Court's March 24, 2015 decision in *B&B Hardware Inc. v. Hargis Industries, Inc.*, 135 S.Ct. 1293 (2015).  Doc. 14.  In *B&B Hardware*, the Court held that a TTAB decision as to the "likelihood of confusion" element of trademark infringement can have preclusive effect in a federal court Lanham Act proceeding.  Plaintiff argues that Midsun's supplemental brief "should be stricken" because *B&B Hardware* was decided prior to Midsun's motion to dismiss.  Doc. 19, at 20 n.2.  That is unnecessary.  Issue preclusion is irrelevant here.  There can be no question that, on the record before the Court, no issues were "'actually litigated and determined'" in the 2005 TTAB proceeding, as would be required for issue preclusion to apply.  *B&B Hardware*, 135 S. Ct. at 1303 (quoting Restatement (Second) of Judgments § 27, p. 250 (1980)); *see* Doc. 10-1 Ex. F.

the exact same parties as the instant litigation, and the TTAB's dismissal of CSL's cancellation petition with prejudice constitutes a "final judgment on the merits," *see American Rice v. Dunmore Properties SA*, 353 F. App'x 428, 430 (Fed. Cir. 2009).  The "sole issue, therefore, with respect to the preclusion of [petitioner's] claim under *res judicata* is whether [its] petition for cancellation . . . [is] based on the same set of transactional facts as its first petition."  *Id.*

CSL argues that its current challenge to cancel Midsun's 2014 trademark application requires the adjudication of different facts than those at issue in CSL's 2002 Petition to Cancel, specifically, facts that post-date that TTAB proceeding.  For example, CSL's counsel explained that one of the merits-based questions for this Court to resolve as to Count IV will be the parties' respective "priority" as to "570."[13]  The argument will thereby be that Midsun's claims to "priority" will have been adversely affected if it did not continually use the "MIDSUN 570" mark in the period between the TTAB proceeding and the instant litigation.[14]  Accordingly, as counsel stated, a significant factual issue to be litigated will be whether Midsun "engaged in continuous use throughout the entire time period up to 2014."  Tr. 48-49 ("They have an additional hurdle in this particular proceeding that they did not have in the 2002 proceeding.").

CSL thus frames a dispute as to its fourth count that centers on facts unavailable to the parties in the earlier TTAB cancellation proceeding.  The Second Circuit holds that "'[i]n determining

---

[13]  "Trademark rights are generally acquired through priority of use," which is "the standard test for ownership."  *Lavatec Laundry Tech., GmbH v. Lavatec, Inc.*, 47 F. Supp.3d 138, 145 (D. Conn. 2014) (internal quotation omitted).

[14]  Specifically, it appears CSL may try to show that Midsun abandoned its trademark, invoking the principle that where "an owner ceases to use a mark without an intent to resume use in the reasonably foreseeable future, the mark is said to have been 'abandoned.' . . .  Once abandoned, a mark returns to the public domain and may, in principle, be appropriated for use by other actors in the marketplace . . . in accordance with the basic rules of trademark priority."  *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) (internal citations omitted).

whether a second suit is barred by [*res judicata*], the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive.'" *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139, 141 (2d Cir. 2005) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)).  Accordingly, a second action is not barred when it arises "out of conduct postdating the filing of [the] first action," *id.* at 143, even if it "'represent[s] a continuance of the same course of conduct,'" *id.* at 141 (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003)).

Here, CSL has credibly stated that in litigating the merits of its cause of action for cancellation of "MIDSUN 570," this Court will necessarily be adjudicating facts that post-date CSL's initial trademark registration challenge.  The Court therefore finds that CSL has stated a plausible claim that because its present challenge to Midsun's registration of "MIDSUN 570" will necessarily involve the litigation of facts that occurred between 2002 and 2014, it will not "be based on the same set of transactional facts as its first petition."  *American Rice*, 353 F. App'x at 430.  Under these circumstances, Defendant has failed to show that Plaintiff's claim is barred pursuant to *res judicata*.[15]

## IV.    Conclusion

For the reasons discussed above, Defendant's Motion for Judicial Notice is GRANTED, and its Motion to Dismiss is GRANTED IN PART, specifically, as to Count II, which is heretofore dismissed with prejudice, and DENIED IN PART, specifically, as to Counts I, III, IV, V, VI, and VII.

\*    \*    \*

Defendant also has two other motions pending before the Court: (i) a motion to modify the

---

[15]  CSL also argued that *res judicata* cannot apply because wider relief is available from this Court than from the TTAB.  Doc. 19, at 19.  Given the ruling in text, the Court need not address this contention.

scheduling order [Doc. 39]; and (ii) a motion for a protective order [Doc. 40]. Plaintiff opposes both motions. Docs. 42, 51. Events subsequent to the filing of the motions have called their present status into question. As to the scheduling order, Plaintiff's counsel stated at the hearing that Plaintiff may no longer "have a strong opposition to reasonable accommodations of the scheduling order." Tr. 76-77. As to the protective order, the parties filed to the docket a stipulated protective order that may seem to obviate the need for a ruling by the Court, [Doc. 50], although the issue was not so clear given counsels' statements at the hearing. The parties are directed to confer regarding the present status of these two motions. In the meantime, the Court finds it administratively prudent to DENY BOTH MOTIONS WITHOUT PREJUDICE to refiling following the parties conference on these issues. Any such filings shall be made on or before **March 25, 2016**.


        **It is SO ORDERED.**

**Dated: New Haven, Connecticut**
        **March 15, 2016**

        _/s/ Charles S. Haight, Jr._
        **Charles S. Haight, Jr.**
        **Senior United States District Judge**