**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

CSL SILICONES, INC.,

        Plaintiff,
v.

MIDSUN GROUP INC.,

        Defendant.

3:14-cv-01897 (CSH)

**APRIL 18, 2017**

**RULING ON PLAINTIFF'S STATEMENT
OF REASONABLE ATTORNEYS' FEES AND EXPENSES**

<u>HAIGHT</u>, Senior District Judge:

On June 27, 2016, the Court denied Defendant Midsun Group Inc.'s Renewed Motion for Protective Order ("Renewed Motion") made pursuant to Fed. R. Civ. P. 26(c)(1)(g) and ordered that Defendant pay Plaintiff's costs and fees in responding to its Motion should Plaintiff CSL Silicones, Inc. seek such fees and costs.[1] Doc. 81 (the "Ruling"). The instant ruling resolves Plaintiff's subsequent request for attorneys' fees, Docs. 82-83. For the reasons that follow, the Court declines to award Plaintiff the amount it requests and directs payment by Defendant of a slightly lesser amount.

**I.**     **Background**

Defendant's Renewed Motion sought an order protecting it against disclosure as to certain of Plaintiff's discovery requests principally on the ground that the information contained purported confidential trade secrets. Doc. 81, at 1, 9. Defendant had filed a nearly identical motion before, and Plaintiff had fully briefed an opposition to it, but the Court denied that earlier motion without

---

[1] Familiarity with the Ruling, Doc. 81, is assumed and is described only as necessary.

prejudice to refiling. *CSL Silicones, Inc. v. Midsun Grp. Inc.*, 170 F. Supp. 3d 304, 319-20 (D. Conn. 2016). The parties had filed jointly a Stipulated Protective Order (the "SPO") and the Court specifically noted that it appeared that the SPO "may seem to obviate the need for a ruling by the Court" although it was "not so clear given counsels' statements at the hearing." *Id.* at 320. The Court denied Defendant's Renewed Motion because the discovery sought was relevant and the SPO adequately protected the trade secrets. *See* Doc. 81.

In the Ruling, pursuant to Fed. R. Civ. P. 37(a)(5), the Court held that Plaintiff was entitled to attorney's fees and costs because "[t]here is no doubt that Defendant's motion was not substantially justified and that sanctions are warranted." Doc. 81, at 10.[2] The Court noted that it had already expressed an initial view that the SPO may have obviated any need for the motion, and it was clear that the SPO had in fact obviated that need. *Id.* More egregiously, Defendant had not even tried to fully explain why the SPO had not obviated the need in its briefings despite already knowing the Court's initial view on the issue. *Id.* Thus, the Court awarded attorneys' fees and costs pursuant to Fed. R. Civ. P. 37(a)(5) and instructed Plaintiff to file a statement as to those fees.

The Court later received a statement as to as to the amount of fees to which Plaintiff claims, Docs. 82-83, in the form of a Declaration from Attorney John A. Clifford ("Clifford Decl."), and Defendant submitted a detailed response and objections to Plaintiff's request in a briefing, Doc. 85 ("Def. Response"). Plaintiff also submitted certain exhibits in support of its fees application ("Clifford Ex."). Defendant also submitted exhibits A-C ("Def. Ex."), including a Declaration from

---

[2] Throughout the Ruling, the Court also took issue with the general "sloppiness" of Defendant's papers and citations to erroneous cases. Doc. 81, at 2-3, 10 n.4. Defendant has apologized to the Court, the opposing party, and the opposing party's counsel for any such confusion. Def. Response, at 1. The Court appreciates and accepts the apology.

Attorney Joseph R. Carvalko ("Carvalko Decl.") and an exhibit attached to that Declaration in support of its response ("Carvalko Ex."). This ruling resolves the parties' dispute as to the award of fees and as to the amount awarded.

## II. Standard for Attorneys' Fees

To evaluate a request for attorneys' fees, courts must conduct a "lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 108 (2d Cir. 2014). If "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures," then the number of hours proffered is reasonable. *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citing *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990)). As to the hourly rate, a district court has discretion but should begin generally with "the prevailing market rates in the relevant community." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)) (internal quotation marks omitted).

"Although there is a strong presumption that the lodestar figure represents a reasonable fee, the district court may, in its discretion, adjust the lodestar based on a variety of factors," but, "must state its reasons for doing so as specifically as possible." *Ayres v. 127 Rest. Corp.*, No. 99-7723, 1999 WL 1295335, at *1 (2d Cir. Dec. 23, 1999) (citations, internal quotation marks, and alterations omitted). For example, "in dealing with items that are 'excessive, redundant, or otherwise unnecessary, . . . the [district] court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Hines v. City of Albany*, 613 F. App'x 52, 54-55 (2d Cir. 2015) (summary order) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)). A Court may also deduct a percentage of hours where proffered

time entries are overly vague. *Kirsch*, 148 F.3d at 172-73; *see also Conn. Hosp. Ass'n v. O'Neill*, 891 F. Supp. 687, 690 (D. Conn. 1994).

This Circuit has long followed the dictates of Judge Newman's opinion in *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148, 1154 (2d Cir. 1983) to evaluate a movant's proffered evidence supporting its attorneys' fees request:

> Hereafter, any attorney—whether a private practitioner or an employee of a nonprofit law office—who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records. . . . All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done.

The Second Circuit subsequently clarified its use of the word "normally" in *Carey*, holding that while it "indicates that we intend to leave the district courts with some limited discretion to make exceptions to the hard-and-fast rule," *Carey* nonetheless "sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010). "In other words, *Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases." *Id.*

### III.    Plaintiff's Statement of Reasonable Attorneys' Fees and Expenses

Plaintiff submitted for consideration several exhibits to demonstrate and prove its fees in accordance with this Court's instructions in the prior Ruling. First, Plaintiff submitted Exhibit A, which are the actual monthly invoices for the months of April 2016 and May 2016 reflecting work performed in March and April 2016 sent by Plaintiff's counsel to its client, CSL Silicones, Inc. *See* Clifford Decl. ¶ 3; Clifford Ex. A. Second, Plaintiff submitted Exhibit B, which "is a table, compiled from [Plaintiff's counsel's] contemporaneous billing records, which calculates the total

amount of attorneys' fees [counsel] incurred in opposing" Defendant's Renewed Motion. Clifford Decl. ¶ 4. Exhibit B was created at Attorney Clifford's direction in consultation with each attorney billing time to determine the amount of time actually spent in opposing Defendant's Renewed Motion. *Id.* Based on the calculations from Exhibit B, the total value of attorneys' fees incurred in opposing Defendants' Renewed Motion that Plaintiff seeks is $16,146.00 based on 47.9 hours with an average hourly rate of $347.51 per hour.

Plaintiff also submitted Exhibit C, an American Intellectual Property Law Association 2015 Report of the Economic Survey (the "AIPLA Report") which details the average billing rates for partners and associates specializing in intellectual property law in different areas of the United States. Plaintiff asserts that the billing rates of the three attorneys involved in opposing Defendant's motions were within the ranges identified in Exhibit C taking into account each attorneys' experience and location. Clifford Decl. ¶¶ 6-7. The three attorneys working on the opposition were: (i) Rachel Zimmerman Scobie, a shareholder of Merchant & Gould P.C., practicing law since 2001; (ii) John T. Winemiller, a shareholder of Merchant & Gould P.C., practicing law since 2000; and (iii) Michael A. Erbele, an associate at Merchant & Gould P.C., practicing law since 2012. *Id.* ¶ 6. Plaintiff does not seek to recover any costs except for the reasonable attorneys' fees in the amount of $16,146.00. *Id.* ¶ 9.

### IV. Defendant's Objections to the Plaintiff's Fees Statement

The Court will address the merits of Defendant's objections below, but summarizes them briefly here. Defendant argues that: (i) the award of attorneys' fees is not proper because Defendant's Renewed Motion was "substantially justified"; (ii) the block billing by Plaintiff obfuscates the amount of time devoted to actually opposing Defendant's motion, (iii) the time entries

are vague and often bill for duplicative work and are more generally just "excessive," (iv) the number of hours claimed is unreasonable in light of the task and the fact that it was a Renewed Motion, and (v) the hourly rates charged are unreasonable because Plaintiff has ignored the "forum rule."

## V.     Analysis of Reasonable Attorneys' Fees

As a preliminary matter, Defendant asserts that attorneys' fees should not be awarded because it was "substantially justified" in bringing its Renewed Motion. The Court disagrees primarily for the reasons stated in its prior Ruling. In that Ruling, the Court concluded that Defendant's relevancy argument was "entirely without merit" and "unsupported by any authority." Doc. 81, at 10. Moreover, Defendant made no effort to fully explain why the SPO did not adequately protect its trade secrets despite the Court expressing that it believed the SPO may have obviated any such concerns. *Id.* Defendant urges that it did not understand the Court to imitate any view on any potential renewed motions for a protective order when it denied the earlier motion. Def. Response, at 3-4. The Court, of course, did not imitate any views on future motions at that time. The point made in the Ruling was that the Court had, in denying the earlier motions, flagged for both parties that the SPO may have obviated any disagreements. Doc. 81, at 10. Defendant wholly ignored that in its Renewed Motion—failing to address fully and adequately the SPO's provisions and explain how the SPO did or did not affect Defendant's arguments.[3] Again, the Court holds that Defendant's Renewed Motion was not "substantially justified," and therefore, Plaintiff is entitled to attorneys' fees pursuant to Fed. R. Civ. P. 37(a)(5).

---

[3] Defendant points to its argument concerning experts for support that it did address the SPO in its motion. Def. Response, at 3. The Court, however, quickly dismissed such concerns based on a basic reading of the provisions of the SPO. Doc. 81, at 7-8.

As discussed above, to determine the amount of attorneys' fees owed to Plaintiff, this Court:

> [M]ust: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.

*Trustees of the I.B.E.W. Local Union v. Norland Elec., Inc.*, No. 11-CV-709, 2015 WL 3581011, at *4 (D. Conn. June 5, 2015) (quoting *Parris v. Pappas*, 844 F. Supp. 2d 262, 266 (D. Conn. 2012)) (internal quotation marks omitted). The Court now turns to each of these considerations and addresses each of Defendant's arguments against the award of fees requested by Plaintiff.

### A. Reasonable Hourly Rate

Plaintiff requests $570 and $450 per hour of work by its more senior attorneys (Attorneys Rachel Zimmerman Scobie and John T. Winemiller respectively) and $300 for its more junior attorney (Attorney Michael A. Erbele); this averages out to $347.51 when the hours are accounted for by Plaintiff. Clifford Decl. ¶¶ 4-7. Attorneys Zimmerman Scobie and Erbele practice in Minneapolis, Minnesota and Attorney Winemiller practices in Knoxville, Tennessee. *Id.* ¶ 6. Defendant objects to these rates, arguing that the Court should not ignore the "forum rule" and should use the hourly rates employed in this district to calculate a reasonable fee. Def. Response, at 17-18. Both parties submitted the AILPA Report as evidence of reasonable attorneys' hourly rates. Clifford Ex. C; Carvalko Ex. 1. Defendants argue that the report is useful as "some guidance" but should not be dispositive because it is largely based on fees charged by attorneys admitted to the patent bar and Plaintiff's lawyers are not admitted to that bar. Def. Response, at 18-19. Defendant believes a $250 hourly fee for partners and $131.57 for is appropriate for attorneys of like

experience in this district.[4]

The parties also disagree over which geographical area from the AILPA Report should be used to determine the reasonable rate to be charged. Plaintiff asserts that the hourly rates are reasonable by comparing the rates to the mean, or average, billing rates for intellectual property attorneys in Boston ($576 for partners and $412 for associates) and in New York City ($530 for partners and $481 for associates) as well as those in Minneapolis/St. Paul ($399 for partners and $240 for associates) and the Metro Southeast ($439 for partners). Clifford Decl. ¶ 5, 7. Defendant asserts that the hourly fees are much too high when you compare them to the averages for the "Other East" category in the AILPA Report, a category that includes Connecticut and other states from Maine to Virginia. Def. Response, at 18 & n.11; Carvalko Ex. 1, at 7. The mean for partners in that category is $427 and it is $298 for associates. Clifford Ex. C, at 3-4; Carvalko Ex. 1, at 9-10.

"The Second Circuit has required locality rates unless the qualifications of counsel are such that a reasonable client would pay these rates and could not get comparable representation from an in-state firm." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10-CV-60, 2012 WL 4092515, at *2 (D. Conn. Sept. 17, 2012) (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009). This "forum rule" requires that courts "generally use 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill Concerned Citizens v. Cnty. of Albany*, 493 F.3d 110, 119 (2d Cir. 2007)). Thus, "when faced with a request for an award of higher out-of-

---

[4] It is not clear to the Court from Defendant's filings how exactly Defendant arrives at these numbers. The numbers are asserted only in Defendant's conclusion. Def. Response, at 21. The Court notes that Defendant's attorney, a senior solo practitioner in the district with significant experience, charges $250 per hour and has alleged that his rate is representative of other lawyers that practice in the manner such as him. Carvalko Decl.¶¶ 2-4, 7-8.

district rates, a district court must first apply a presumption in favor of application of the forum rule." *Id.* at 175. "[T]o overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* Mere proximity of the districts and "brand name" or prestige of the attorneys will not overcome the presumption. *Id.* at 176. The party seeking the award must make a "particularized showing" that the selection of counsel was based on experience and objective factors *and* that use of in-district counsel would produce a substantially inferior result. *Id.* at 176.

Plaintiff has not tried overcome the presumption of application of the forum rule; instead, Plaintiff appears to assert that Boston and New York City offer comparable rates to those charged in this district by intellectual property attorneys. This, however, ignores that Connecticut is represented in the AIPLA Report in the "Other East" category. The Court, thus, concludes that the forum rule should apply and the reasonable hourly rates recoverable should be those charged by attorneys of comparable experience in comparable trademark litigations in this district. Based on the evidence before this Court, the Court determines that an hourly rate of $500 for Attorney Zimmerman Scobie, $450 for Attorney Winemiller (the actual rate sought by Plaintiff) and $300 for Attorney Erbele (the actual rate sought by Plaintiff) are reasonable hourly rates for the instant litigation. *See, e.g.*, *Barnes Grp. v. Does*, No. 12-CV-1688, 2014 WL 580896, at *1 (D. Conn. Feb. 12, 2014) (applying the presumption for an in-district rate and allowing for a $500 rate for partner and $375 for associate in a Lanham Act case with trademark infringement and cyberpiracy claims). Attorneys Zimmerman Scobie and Winemiller had, at the time of the motion, nearly fifteen or sixteen years of experience and Attorney Erbele had nearly four years of experience.

These rates are based, in part, on the AILPA Report, a report relied on by both parties, which

identifies an average of $427 and $298 for partners and associates respectively in the "Other East" category. The Court concludes that the higher rate of $500 and $450 for senior level partners is reasonable here particularly in light of the fact that "Other East" includes a number of other states, not just Connecticut, and that similar partners are paid substantially higher hourly fees in metropolitan areas close to this district. To account for these differences, and the fact that these rates are averages, the Court has increased the amount to $500 and $450 per hour. In addition, the Court concludes that the associate rate of $300 requested by Plaintiff is reasonable in light of the fact that the "Other East" average rate is just $2 less at $298.

In so ruling, the Court rejects Defendant's argument that these fees should be reduced to $250 for senior level partners and $131.57 for associates in this district. Defendant focuses largely on the fact that each lawyer is not admitted to the patent bar, but each of Plaintiff's lawyers are intellectual property lawyers and this is a complicated trademark dispute. The Court concludes that considering the AILPA Report and the rates regularly billed by Plaintiff, the rates set by the Court are reasonable. *See Barnes Grp.*, 2014 WL 580896, at *1.

    **B.**    **Hours Reasonably Expended**[5]

        **1.**    **Attorney Zimmerman Scobie**

Plaintiff seeks reimbursement for 6.3 hours of work performed by Attorney Zimmerman Scobie.[6] Clifford Ex. B. The Court has reviewed Attorney Zimmerman Scobie's log of tasks

---

[5] The Court assumes, only for the present section, that the descriptions of the nature of the work done were drafted contemporaneously with the hours worked, are not impermissibly vague, and are not otherwise duplicative or excessive. The Court will then address these potential deficiencies in the following section unless Defendant has made a specific argument directed to one attorney's hours, in which case it will be addressed here as well as in the following section.

[6] The Court arrived at this number, and the other numbers for Attorneys Erbele and Winemiller, by adding up the column "Hours Spent Opposing Renewed Motion" in Plaintiff's

performed (Clifford Exs. A, B) and finds that the hours spent were reasonably expended. Attorney Zimmerman Scobie spent this time reviewing and analyzing Defendant's Renewed Motion, conferring with other attorneys working on the opposition to the Renewed Motion, reviewing and revising the draft of that opposition, and reviewing Defendant's reply briefing to ascertain whether another sur-reply should be filed. *See* Clifford Ex. B. Thus, Plaintiff has demonstrated that Attorney Zimmerman Scobie reasonably expended 6.3 hours of reimbursable work with respect to opposing Defendant's Renewed Motion.

### 2. Attorney Erbele

Plaintiff seeks reimbursement for 41.1 hours of work performed by Attorney Erbele. Clifford Ex. B. The Court has reviewed Attorney Erbele's log of tasks performed (Clifford Exs. A, B) and finds that the hours spent were reasonably expended. Attorney Erbele spent this time reviewing and analyzing Defendant's Renewed Motion, conferring with other attorneys working on the opposition to the Renewed Motion, analyzing appropriate caselaw on the specific issues raised by Defendant's Renewed Motion, substantially drafting the opposition, revising the opposition in light of comments from Attorney Zimmerman Scobie, conducting additional research to address such comments, and finalizing the opposition for filing. *See* Clifford Ex. B.

Defendant argues that these hours expended were not reasonable because Plaintiff had already drafted an opposition to Defendant's prior motion and submitted it. Def. Response, at 11-12. In light of the fact that approximately 45% of Plaintiff's opposition was identical to the prior submitted opposition, Defendant argues that Attorney Erbele's hours are unreasonable and

---

Exhibit B. Defendant reached the same conclusion with regard to the hours Plaintiff seeks to have reimbursed for each attorney. *See* Def. Response, at 5.

Defendant should not be required to pay these fees.[7] *Id.* Defendant also asserts that Attorney Erbele's hours (approximately 6.5 hours according to Defendant) spent on research are unreasonable given that only eight cases were added to the opposition. *Id.* at 16-17.[8] The Court disagrees. Attorney Erbele spent just over forty hours analyzing, researching, drafting, and revising the opposition. His time entries reflect that his work was concentrated on updating the research, updating the prior draft, revising the draft in light of comments, and adding new sections related to his research as well as sections to address the SPO. *See* Clifford Ex. B. Thus, Plaintiff has demonstrated that Attorney Erbele reasonably expended 41.1 hours of reimbursable work with respect to opposing Defendant's Renewed Motion.

### 3. **Attorney Winemiller**

Plaintiff seeks reimbursement for just .5 hours of work by Attorney Winemiller. Clifford Ex. B. The Court has reviewed Attorney Winemiller's log of tasks performed (Clifford Exs. A, B) and finds that the hours spent were reasonably expended. Attorney Winemiller spent this time communicating with Attorney Zimmerman Scobie and Attorney Erbele as well as reading the reply briefing filed by Defendant. Defendant asserts that these hours are entirely duplicative of Attorney Zimmerman Scobie and should not be considered reasonable, given that two partners reviewing the Renewed Motion and opposition was unnecessary. Def. Response, at 14-15. The Court disagrees.

---

[7] Defendant relies on an elaborate breakdown of the identical nature of the oppositions based on pages written and believes a certain amount of time and money could cover each newly added page. Def. Response, at 11-12. The Court does not believe an attorney's work can be fully valued using this approach and Defendant cites no caselaw supporting such an approach here.

[8] Again, Defendant relies on an elaborate breakdown of the new cases added to demonstrate that such research was unnecessary. The Court disagrees that this demonstrates that Attorney Erbele's 6.5 hours of research were unnecessary or unreasonable. For example, Attorney Erbele could have researched and not included relevant cases or every case that he read fully in the 6.5 hours he spent conducting research.

Attorney Winemiller spent a limited amount of time, in fact only one half hour, working on the opposition to this Renewed Motion and such communications may well have been necessary simply to keep him involved, to provide his opinion, and keep him apprised of counsel's progress on the opposition. Thus, Plaintiff has demonstrated that Attorney Winemiller reasonably expended .5 hours of reimbursable work with respect to opposing Defendant's Renewed Motion.

### 4. Conclusion as to Hours Reasonably Expended

Prior to any adjustments, the Court determines that Plaintiff has spent 47.9 hours in reasonably expended and documented time on opposing Defendant's renewed motion, amounting to $15,705 utilizing the reasonable hourly rates set by the Court.[9]

### C. Adjustments to Attorney's Fees

### 1. Lack of Contemporaneous Records As to the Nature of the Work

Defendant argues that Plaintiff has not submitted adequate contemporaneous records and that this impacts Defendant's and the Court's ability to adequately understand the entries. Def. Response, at 5-6 n.4. Defendant asserts that the invoice submitted by Plaintiff, Clifford Exhibit A, is not evidence that the attorneys made the entries as the work was completed. Although to some extent this could be true, Plaintiff has submitted a declaration sworn to by one of its attorneys, John A. Clifford, which states that the invoices were created in the ordinary course of business using Merchant & Gould LLP's billing software, reflect contemporaneous business records of the attorneys' time, and that Clifford Exhibit B is "a table, compiled from M&G's contemporaneous billing records." Clifford Decl. ¶¶ 3-4, 8. Exhibit B contains the exact dates and descriptions of the work as are included in the invoices on Exhibit A. The Court sees no reason to discredit Attorney

---

[9] $3,150 for Attorney Zimmerman Scobie (6.3 hours at $500/hour); $12,330 for Attorney Erbele (41.1 hours at $300/hour); and $225 for Attorney Winemiller (.5 hours at $450/hour).

Clifford and believes such records are generally sufficient under the standard annunciated in *Carey*, 711 F.2d at 1148.[10] *See Prince of Peace Enterps., Inc. v. Top Quality Food Market, LLC*, No. 7-CV-349, 2014 WL 793084, at * (S.D.N.Y. Feb. 28, 2014) (holding that invoices were a sufficiently contemporaneous record given that copies of checks reflecting the payments were in the record and the invoices were not "the sort of post-hoc cobbling together of notes, emails and calendars that courts have disapproved of in the past"), *adopted in part by*, 2015 WL 456645 (S.D.N.Y. Feb. 3, 2015). In fact, Defendant appears to recognize this asserting that it would be appropriate to equate the reliability of contemporaneous time sheet entries to an invoice if there was an assertion under oath that they are equivalent in every regard. Def. Response, at 8. That is, in effect, what Plaintiff has done here with the Clifford Declaration and Exhibits A and B.

## 2. Vague Descriptions of Work Performed and Block Billing

Defendant cursorily asserts, at various points in its response, that certain of Plaintiff's descriptions are vague, and therefore, a percentage reduction is warranted. *See* Def. Response, at 10-15. As examples, Defendant points to Attorney Zimmerman Scobie's entries, specifically one on March 29, 2016 that stated she had "confer[red] with Michael Erbele and John Winemiller regarding strategy for response to motion for protective order," and two other entries on April 1, 2016 and April 5, 2016 that stated she had "confer[red] with team regarding same" after describing other work on the opposition. *Id.* at 13; *see also* Clifford Ex. B, at 1, 3-4. Although it is true that

---

[10] The attorneys did, however, use block billing and there are, in regards to some entries, no contemporaneous records of the time actually spent solely in opposing the motion (as opposed to the other activities also billed in the same entry). However, the attorneys have broken down such fees solely for purposes of the fee statement in Clifford Exhibit B after the fact. *See* Clifford Decl. ¶ 4 ("I consulted each attorney listed in Exhibit B to determine the amount of time in each time entry listed in Exhibit B that was spent opposing Midsun's Renewed Motion for Protective Order."). The Court will address this issue in the following section.

"[f]ees should not be awarded for time entries when the corresponding description of work performed is vague and therefore not susceptible to a determination of whether the time [billed] was reasonably expended," *Conn. Hosp. Ass'n*, 891 F. Supp. at 690 (citation and internal quotation marks omitted), the entries pointed to by Defendant are not vague at all and the Court can discern whether the time was reasonably expended. The March 29th entry clearly billed just one half hour of Attorney Zimmerman Scobie's time to conferring with her team regarding a strategy for responding to Defendant's Renewed Motion. Clifford Ex. B, at 1. The April 1st and April 5th entries also clearly refer to Attorney Zimmerman Scobie conferring with her team regarding the review and revising of the draft opposition, and Attorney Erbele's entries support that he also conferred with Attorney Zimmerman Scobie on the dates at issue.[11] Clifford Ex. B, at 3-4. In short, there is nothing impermissibly vague about these entries when they are read in full and in context.[12]

Defendant also asserts that the block billing utilized by Plaintiff, in addition to the overall vagueness of the entries, makes it impossible to ascertain whether the hours asserted were reasonable. Def. Response, at 6-8. However, block billing is not prohibited and does not warrant a reduction "absent evidence that [a party's] block-billing has obscured such unreasonable billing." *See Hnot v. Willis Grp. Holdings Ltd.*, No. 01-CV-6558, 2008 WL 1166309, at *6 (S.D.N.Y. April

---

[11] Even if the entry was vague, the Court could clarify it by reference to other entries such as Attorney Erbele's. *See Blumenschine v. Prof'l Media Grp., LLC*, No. 02-CV-2244, 2007 WL 988192, at *17 (D. Conn. March 30, 2007) ("A court may attempt to clarify vague entries by looking at the context of adjacent entries." (citing *Conn. Hosp. Ass'n*, 891 F. Supp. at 691)).

[12] The cases relied upon by Defendant where such reductions were made are inapposite. For example, in *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 145 (S.D.N.Y. 2013), the entries did not state that the tasks were done in support of the motion for which fees were awarded. Essentially, the entries stated only "confer with client" without any connection to the motion; whereas here, the entries stated "Review and finalize opposition to motion for protective order; confer with team regarding same," which clearly connects the "confer" to the opposition drafting and makes the fee sought reasonable. Clifford Ex. B, at 3.

7, 2008); *see also Ass'n of Holocaust Victims v. Bank of Austria Creditanstalt AG*, No. 04-CV-3600, 2005 WL 3099592, at *5 (S.D.N.Y. Nov. 17, 2005) (noting that block billing is not prohibited but that it can make it difficult to determine if reported hours are duplicative or unnecessary). Other courts have recognized that it is not appropriate to "impose an across-the-board penalty simply because a law firm has engaged in a generally accepted billing practice." *Hnot*, 2008 WL 1166309, at *6. Here, Plaintiff has addressed this concern by adding a separate column that delineates specifically the hours spent opposing the Renewed Motion. Clifford Ex. B.[13] With the block billed entries that contain time billed for matters unrelated to the opposition of the Renewed Motion, Plaintiff seeks compensation only for time billed related to the opposition—and a separate column denotes that time.

The Court has reviewed the blocked billed entries and determined that the hours noted as spent working to oppose the Renewed Motion are reasonable. There is no evidence that the block billing has obscured an assessment of whether the hours ultimately asserted by Plaintiff are reasonable. Defendant points to a March 25, 2016 entry made by Attorney Erbele that reflects block billing for tasks related to modifying the scheduling order in addition to those related to opposing Defendant's Renewed Motion. Def. Response, at 7. Defendant ignores altogether that Plaintiff has asserted that only a specific number of the total hours billed for this entry were attributed to opposing Defendant's Renewed Motion. Attorney Erbele billed 3.6 hours and attributes 3 hours of that time to work opposing Defendant's Renewed Motion. Clifford Ex. B, at 1. This is reasonable

---

[13] The Court recognizes that these breakdowns were not contemporaneous with the time entries, which recorded only the total time spent for each entry. However, the Court does not believe that in and of itself should warrant a reduction. To do so would mean that block billing, a practice often utilized by attorneys, would always result in a reduction. This would be contrary to the rule expressed in other cases. *See, e.g.*, *Hnot*, 2008 WL 1166309, at *6.

given that the majority of the entry is devoted to substantive research related to that opposition as well as analyzing Defendant's Renewed Motion, a more complex task than the work and correspondence related to modifying the scheduling order.[14]

### 3. Duplication of Efforts and Excessive Hours

Defendant asserts that the tasks split among Attorneys Zimmerman Scobie, Erbele and Winemiller were inappropriate and duplicative of each other. Def. Response, at 14-15. Essentially, Defendant appears to assert that the task at hand did not require the work of two partners and did not require that the attorneys confer with each other. *Id.* The Court rejects Defendant's argument.

It is true that "a trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." *Blumenschine*, 2007 WL 988192, at *17 (quoting *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992)) (internal quotation marks omitted). However, in this case, the attorneys each performed specific and separate tasks, a division revealed by a review of the time entries. Attorney Erbele conducted the research and initial drafting in light of comments and conversations with the more senior Attorneys Zimmerman Scobie and Winemiller. He also input and incorporated changes to the draft from these conversations and other edits. Attorney Zimmerman Scobie took the lead on supervising the drafting and Attorney Erbele's work

---

[14] Defendant later on points to a March 25, 2016 entry by Attorney Zimmerman Scobie as being unreasonable because it bills 1 hour of 1.8 hours to work opposing Defendant's Renewed Motion when it included work related to scheduling orders. Def. Response, at 9. Reviewing that entry, however, leads to the conclusion that such billing was reasonable. It is just over half the time of the full entry that is devoted to work opposing Defendant's Renewed Motion and the entry also provided that she spent time "review[ing] and analyz[ing] the motion for protective order." Clifford Ex. B at 1. It is clear that this would take the majority of her time in relation to the other tasks listed, which include correspondence with local counsel and with Attorney Erbele regarding the scheduling order and opposing Defendant's Renewed Motion.

(expending just 6.3 hours to do so), while Attorney Winemiller provided additional support as needed (expending just .5 hours to do so).

Defendant primarily takes issue with the fact that the opposition went through multiple drafts and revisions, asserting that such effort is improper duplication. Def. Response, at 14. The Court disagrees. Such drafting exercises are reasonable in this instance. In any event, the opposition went through, at most, three rounds of comments from Attorney Zimmerman Scobie. There was no duplication in these efforts and such efforts were not excessive; each round of editing, based on the descriptions in the entries, provided something for Attorney Erbele to research, add or edit prior to the finalization of the opposition. *See* Clifford Ex. B. Defendant also appears to assert that the fact that each attorney billed for conferring with one another was unnecessary duplication. The Court, again, disagrees. That is not the type of duplication referenced and elaborated on in the appropriate caselaw. *See, e.g.*, *Blumenschine*, 2007 WL 988192, at *17 (noting that such duplication occurs when multiple lawyers perform a single task). Each attorney was entitled to bill for his or her time spent discussing the opposition draft or Defendant's Renewed Motion with each other.

To the extent that Defendant has argued the hours were excessive in relation to the task at hand, particularly in light of the fact that an opposition to a prior motion had already been drafted, the Court, again, rejects such an argument. The total number of hours spent by each attorney was reasonable to the task at hand, even in light of the fact that an opposition to a prior similar motion was already submitted. *See* Part V(B)(2), *supra*.

**D.     Conclusion as to Attorneys' Fees**

Plaintiff identified $16,146 in documented reasonable attorneys' fees. The Court has determined that number should be reduced as to the 6.3 hours attributed to Attorney Zimmerman

Scobie because her hourly rate should be $500 instead of $570. Plaintiff is therefore entitled to $15,705 in reimbursement for attorneys' fees.

**VI. Conclusion**

Defendant is ORDERED to transmit to the Plaintiff the amount of **$15,705** in attorneys' fees for fees required for Plaintiff to opposed Defendant's Renewed Motion for a protective order. Defendant is further directed to certify with the Court, in the form of an affidavit, its full compliance with the terms of this ruling on or before **June 16, 2017**, or otherwise inform the Court why compliance by that date is not feasible.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut
April 18, 2017**

    */s/ Charles S. Haight, Jr.*
**Charles S. Haight, Jr.
Senior United States District Judge**