**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

CSL SILICONES, INC.,

                    Plaintiff/Counterdefendant,

  v.

MIDSUN GROUP INC.,

                 Defendant/Counterclaimant.

Civil Action No.
3:14-CV-1897 (CSH)

**AUGUST 3, 2018**

**MEMORANDUM AND ORDER**

**HAIGHT, Senior District Judge:**

According to the Court's prior *Omnibus Ruling on Summary Judgment Motions* ("SJ Ruling"), CSL Silicones, Inc. ("CSL") asked that the Court find that "Midsun's **infringement is intentional and willful**." *CSL Silicones, Inc. v. Midsun Grp. Inc.*, 301 F. Supp. 3d 328, 362 (D. Conn. 2018). Such a finding, it is said, "would affect the measure of damages and fees that CSL would be entitled to, if it prevailed in this litigation." *Id.* The Ruling said that since questions of fact existed as to, *inter alia*, "whether Midsun **acted in good faith** in its adoption of the 570 and 579 marks, summary judgment on the issue of **willful infringement**" is not appropriate. *Id.*

Next, CSL sought summary judgment on Midsun's affirmative defenses. CSL argued that "Midsun cannot prevail on its defenses of **laches**, acquiescence or equitable estoppel due to Midsun's **intentional infringement, or 'unclean hands,' <u>and</u>** because Midsun cannot establish the necessary elements of each defense." *Id.* at 363 (emphasis added).

These two propositions are stated in the disjunctive. The first proposition is that of unclean

1

hands. As to that issue, the Court said in the Ruling: "As an initial matter, the Court addresses CSL's contention that Midsun's 'unclean hands' bars invocation of its equitable defenses." *Id*. at 363. The Ruling then observed that "the Court has already determined that material questions of fact exist as to whether Midsun **intentionally infringed** on CSL's marks," so that "whether Midsun may maintain its **equitable defenses,** in the light of its potentially **dirty hands**, is a question to be resolved another day." *Id.* at 364. The Court cited a case from the Southern District of New York, which held that "because a material issue of fact exists as to whether **intentional infringement** occurred, Defendant may not prevail on its equitable defenses in summary judgment, because it may not be permitted to raise them at all." *Id*. (quoting *Emmpresa Cubana Del Tavaco v. Culbro Corp*., 213 F. Supp. 2d 247, 273 (S.D.N.Y. 2002)).

Which gives rise to this question: Who decides whether Midsun committed the sort of **intentional infringement** which prevents it from raising an equitable defense like **laches**? The Court has held that this question cannot be answered summarily; it must be tried; but who will try it? The Court, as an equitable question, or a jury, as a legal question?

If this particular issue is for the jury, that is presumably because the sixth *Polaroid* factor inquires into an allegedly infringing defendant's "good faith," where "the only relevant intent is intent to confuse" purchasers as to the source of the product. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961). The SJ Ruling concluded that "[i]t cannot be said that Midsun's first use of the marks under the distribution agreements, in connection with CSL's product, was done in **bad faith**." 301 F. Supp. 3d at 360. In *Polaroid* parlance, a defendant adopts a plaintiff's trademark in "good faith" or "bad faith"; there is no moral middle ground. Thus the Second Circuit said in *Arrow Fastener Co. v. Stanley Works*, 59 F.2d 384, 397 (2d Cir. 1995):

"Prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith."

At this point in its quoted analysis, the SJ Ruling says: "CSL may not prevail on summary judgment on Midsun's equitable defenses, based on the **unclean hands doctrine**. However, CSL asserts **other, independent grounds** for summary judgment on Midsun's defenses. The Court will address each defense in turn." 301 F. Supp.3d at 364. The first defense the Court discussed is **laches**.

**Laches** is an equitable defense whose necessary elements are by now well established. Laches "bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997) (quotation marks and citation omitted). The SJ Ruling cites Second Circuit authority for this proposition: "To prove a laches defense, a defendant must show that '[1] that plaintiff had knowledge of defendant's use of its marks, [2] that plaintiff inexcusably delayed in taking action with respect thereto, and [3] that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time.'"301 F. Supp. 3d at 364 (quoting *Vaad L'Hafotzas Sichos, Inc. v. Kehot Publ'n Soc'y, a div. of Merkos L'Inyonei Chinuch, Inc*., 697 F. App'x. 63, 64 (2d Cir. 2017)).

On the question of a plaintiff's delay in taking action, Lanham Act trademark infringement cases like this one look to analogous state limitations statutes. In *Federal Treasury Enterprise Sojuzplodoimport v. Spirits International B.V.*, 809 F.3d 737 (2d Cir. 2016), the Second Circuit said in an opinion by Judge Jacobs: "Laches is an equitable defense. Because the Lanham Act does not prescribe a statute of limitations, federal courts often look to the most appropriate or most analogous

state statute of limitation to determine when the presumption of laches applies to Lanham Act claims." *Id.* at 745-46 (citation and internal quotation marks omitted), *cert. denied*, 137 S. Ct. 160 (2016).

In Second Circuit laches jurisprudence, the concept of a "presumption of laches" keyed into an analogous state limitations statute had its genesis in Judge Friendly's seminal opinion in *Larios v. Victory Carriers, Inc.*, 316 F.2d 63 (2d Cir. 1963), an admiralty case, where Judge Friendly said that "in deciding whether maritime claims are barred by laches, courts of admiralty will use local limitation statutes as a rule-of-thumb," which "seems to put it right"; he then delivered this much-cited formula: "When the suit has been brought after the expiration of the state limitation period, a court applying maritime law asks why the case should be allowed to proceed; when the suit, although perhaps long delayed, has nevertheless been brought within the state limitation period, the court asks why it should not be." *Id.* at 66. That formula remains the touchstone in admiralty cases; *Larios* was cited and its formula quoted in *Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*, No. 16-1356-CV,--- F.3d ---, 2018 WL 3400524 at *14 (2d Cir. July 13, 2018) (fuel supplier's *in rem* action against vessel to enforce maritime lien barred by laches where plaintiff's unreasonable delay prejudiced defendant shipowner). In *Federal Treasury Enterprise*, the Second Circuit applied the formula in a Lanham Act case; Judge Jacobs' opinion phrased it thus:

> If the most closely analogous state statute of limitations has not run, the presumption of laches does not attach and the defendant bears the burden of proving the defense. But once the analogous state statute of limitations has run, the burden shifts to the plaintiff to show why laches should not apply.

809 F.3d at 746 (internal citations omitted).

In the SJ Ruling in this case, I applied that formula to Midsun's laches defense, and

concluded that "[t]o determine which party has the burden of proof, the Court looks to Connecticut's three-year statute of limitations for fraud." 301 F. Supp. 3d at 365. That conclusion places the burden of proof on the issue of laches upon CSL, for these reasons:

> CSL filed its complaint on December 17, 2014, thus the relevant date for the purposes of laches is December 17, 2011. It is undisputed that CSL was aware of Midsun's allegedly infringing conduct by 2000, when CSL wrote to Midsun to complain of Midsun's use of the marks in connection with Midsun's own product. It therefore follows that the presumption of laches applies in this matter, and the burden is on CSL to demonstrate its inapplicability to this case.

*Id.*

In order to demonstrate the *inapplicability* of laches, CSL must prove the reverse of the elements the Second Circuit identified in *Ivani*. That is to say: CSL must prove that, at the pertinent times, CSL had no knowledge of Midsun's use of its marks; CSL's delay in taking action with respect thereto was not unreasonably long; and Midsun was not prejudiced by permitting CSL to sue Midsun for infringement after that period of time.

At the summary judgment stage, CSL moved *inter alia* for summary judgment on Midsun's defense of laches. Midsun argued in response that laches barred CSL's claims as a matter of law. *See* 301 F. Supp. 3d at 362-63. The Court held that on the record then existing, "CSL has failed to carry its burden on summary judgment as to Midsun's affirmative defense of laches," in that "CSL has not rebutted the presumption of prejudice and undue unreasonableness." *Id.* at 366.

In consequence, the Court denied CSL's motion for summary judgment on Midsun's defense of laches. The issue remains for trial, with CSL continuing to bear the burden of proving the facts determinative of the applicability of laches to the case. Two preliminary questions arise: (1) Who should be the trier of fact, judge or jury; and (2) When during the trial process should that

determination be made.

These considerations implicate Fed. R. Civ. P. 42(b), which provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Moore's text says that Rule 42(b) authorizes "allowing the court to select specified claims or issues and decide them before proceeding to other matters in the same case," and gives district courts "discretion to . . . separate for trial virtually any other issue that it thinks proper. In doing so, the court may act on the motion of any party or *sua sponte*. . . . The court's power to grant or deny motions to bifurcate claims and order separate trials is subject to appellate reversal only if there has been an abuse of discretion." 8 James Wm. Moore et al, *Moore's Federal Practice* ("*Moore's*"), §§ 42.20[1], 42.25[a]-[b] (3d ed. 2010).

The advisability of separate trials frequently is presented by Rule 42(b)'s invocation in a case which includes both legal and equitable claims. *See, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511 (1959) ("The district judge simply exercised his inherent discretion, now explicitly confirmed by the Federal Rules of Civil Procedure, to schedule the trial of an equitable claim in advance of an action at law. . . . no abuse of discretion is apparent in this case.") (Stewart, *J.*, dissenting). A trial judge's discretion in ordering separate trials is limited by the last sentence of Rule 42(b), a mandatory provision directing the judge to "preserve any federal right to a jury trial." In the context of a case presenting legal and equitable claims, that duty comes into play if, but only if, the legal and equitable claims turn upon common issues. *Moore's* states:

> Once an equitable claim has been separated for trial from legal

claims, and there are common issues between the claims, the legal claims must be tried *before* the equitable claims, to avoid any possibility of infringement on the right to jury trial by the collateral estoppel or res judicata effect of a court determination of the equitable claims.

When there are no common issues between the equitable and legal claims, the order of trial does not affect the right to a jury trial.

8 *Moore's* § 42.22[3] (footnotes omitted).

The cases *Moore's* cites for these propositions include *Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001), a copyright infringement case, where the Ninth Circuit observed that "a constitutional concern may arise when the district court orders that some portions of a case be tried to the judge and others to a jury," and went on to hold:

Generally speaking, this arrangement is permissible, because only certain issues carry the right to a jury trial. In particular, the Seventh Amendment preserves the right to trial by jury of all legal claims, whereas no right to a jury exists for equitable claims. This is exactly the situation that presents itself here. McClory has a constitutional right to a jury trial on his copyright infringement claims, but there is no right to a jury on the equitable defense of laches. A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.

263 F.3d at 962 (citations and internal quotation marks omitted).

Having said this in *Danjaq*, the Ninth Circuit then acknowledged that "difficulties may arise" when "the legal and equitable issues overlap and the evidence is intertwined." *Id.* The intertwining of issues and evidence can occur in a copyright infringement case, in the Ninth Circuit's view, because "the equitable defense of laches is subject to a counterdefense of naked infringement," "infringement is a predicate to finding willful infringement, and infringement often presents a question of fact for the jury." *Id.* "Thus," the Ninth Circuit continued, "when naked infringement is

posed as an exception to laches, the bifurcation of laches from infringement may cause constitutional problems." *Id.* However, as *Danjaq* developed in the district court, "there was no such problem." The district judge conducted a laches hearing at the beginning of the trial, which "did not rule on the issue of infringement. Instead, it essentially assumed infringement (as do we on appeal) and addressed willfulness as a matter or law. Because the court ruled as a matter of law, it did not tread on McClory's right to a jury trial on infringement." *Id.* The Ninth Circuit's conclusion in *Danjaq* summarizes its holdings:

> [W]e affirm the district court's determination that Danjaq established laches; that, as a matter of law, McClory is unable to establish willful infringement; and that laches bars McClory's claims in their entirety. We also conclude that the district court did not abuse its discretion by bifurcating the trial and by declining to grant a continuance.

*Id.* at 963.

It should be noted that a case like *Danjaq* which considered the effect of the laches doctrine upon an action for copyright infringement would not present itself today. The Ninth Circuit decided *Danjaq* in 2001. The Supreme Court has subsequently held that laches is not available as a defense to claims for copyright infringement brought within the limitations period prescribed under the Copyright Act. *Petrella v. Metro-Goldwyn-Mayer, Inc.,* --- U.S. **---**, 134 S.Ct. 1962 (2014). The Court extended that ruling to claims for patent infringement in *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC,* ---- U.S. ----, 137 S.Ct. 954 (2017), which holds that laches is not available as a defense to patent infringement claims brought within the Patent Act's limitation period. However, *Petrella* and *SCA Hygiene* have no effect upon the case at bar, where CSL sues Midsun under the Lanham Act for trademark infringement. Just last month, the Ninth Circuit said in *Pinkette Clothing, Inc. v. Cosmetic Warriors Limited,* 894 F. 3d 1015 (9th Cir. 2018), a Lanham

Act suit for trademark infringement and cancellation: "CWL [the plaintiff] does not argue that *Petrella* and *SCA Hygiene* preclude application of laches to its trademark *infringement* claim—presumably because the Lanham Act prescribes no statute of limitations for such a claim. Instead, CWL only argues that those cases preclude application of laches to its *cancellation* claim because it filed that claim before Pinkette's mark became incontestable." *Id.* at 1023 (internal citation omitted). The Ninth Circuit rejected that argument, held that "laches is available as a defense to CWL's cancellation claim," and analyzed the laches defense in accordance with the familiar formula: "If the most analogous state statute of limitations expired before suit was filed, there is a strong presumption in favor of laches. That presumption is reversed, however, if the most analogous state statute of limitations expired after suit was filed." *Id*. at 1025 (internal citations omitted).

Unlike the trial judge in *Danjaq*, who conducted a "laches hearing" before submitting anything to a jury and then dismissed the copyright infringement claims in their entirety on the ground of laches, the trial judge in *Pinkette* conducted a five-day jury trial; received a jury verdict finding for plaintiff CWL on its infringement and cancellation legal claims but finding (in an advisory capacity) for defendant Pinkette on its laches defense; discharged the jury; and conducted a further evidentiary hearing on the laches defense. The trial judge concluded that on the evidence, laches applied to bar CWL's infringement and cancellation claims. The Ninth Circuit affirmed: "The district court did not abuse its discretion in applying laches to bar CWL's cancellation and infringement claims." 894 F.3d at 1029. The Ninth Circuit also noted CWL's contention at trial that "the doctrine of unclean hands precludes Pinkette from asserting laches," an equitable doctrine that may be invoked only on a showing by "clear and convincing evidence" of "wrongfulness, willfulness, bad faith or gross negligence." 894 F.3d at 1029. Again, the Ninth Circuit affirmed: "The district

court declined to apply unclean hands here. We review this holding for abuse of discretion. . . . The district court did not abuse its discretion by declining to apply the doctrine of unclean hands." *Id.* The district court's holding on laches disposed of the entire case: "As a result of laches, CWL can neither enforce its trademark rights against Pinkette's use of the LUSH mark on clothing nor cancel Pinkette's registration for use of the mark on clothing." *Id*. at 1030.

The most recent cases on point, including those cited in *Moore*'s, were decided by the Ninth Circuit, whose decisions are not binding on this Court. I am bound by decisions of the Second Circuit and Supreme Court.

I held in the SJ Ruling that the most analogous Connecticut statute of limitations had run before CSL filed its complaint against Midsun. "It therefore follows that the presumption of laches applies in this matter, and the burden is on CSL to demonstrate its applicability to this case." 301 F. Supp.3d at 365. That holding is the law of the case, and is mandated by the Second Circuit decisions cited *supra*. "[O]nce the analogous state statute of limitations has run," the Second Circuit said in *Federal Treasury Enterprise*, "the burden shifts to the plaintiff to show why laches should not apply." 809 F. 3d at 746. The Second Circuit further held that "[t]he ultimate determination of whether laches bars a plaintiff's claim is within the trial court's discretion," and affirmed the trial court's dismissal of claims filed "after New York's six-year statute of limitations for fraud had run" as barred by laches:

> The district court further held that FTE unreasonably delayed in bringing the non-section 32(1) claims and that defendants would be prejudiced by FTE's litigation of such claims after this delay. The district court did not abuse its discretion in concluding that the presumption of laches arose or that the defendants would be prejudiced were FTE able to litigate its non-section 32(1) claims.

*Id.*

A separate but related question must be considered. It arises out of CSL's contention, noted *supra* and in the SJ Ruling, that "Midsun's 'unclean hands' bars invocations of its equitable defenses." 301 F. Supp. 3d at 363. That particular subject is explored by the Second Circuit in *Hermes International v. Lederer de Paris Fifth Avenue, Inc.*, 219 F.3d 104 (2d Cir. 2000). Plaintiff Hermes, a manufacturer of leather handbags and accessories, brought a trademark and trade dress infringement action against sellers of allegedly 'knock-off' products. Plaintiff sought injunctive relief and monetary damages. The district court held on motions for summary judgment that plaintiff Hermes, aware of defendants' conduct for a considerable time before filing suit, "had unreasonably delayed bringing an infringement suit against [defendants] Lederer and Artbag, and thus was barred by the doctrine of laches from obtaining monetary or injunctive relief against those companies." 219 F.3d at 106.

On appeal, the Second Circuit distinguished between the effect of laches upon plaintiff's claims for injunctive and monetary relief. The Court of Appeals reversed the district court's conclusion that laches barred injunctive relief. The Second Circuit reasoned:

> [T]he district court misapplied the law governing the doctrine of laches. It is well established that laches is not a defense against injunctive relief when the defendant intended the infringement. This good-faith component of the laches doctrine is part of the fundamental principle that he who comes into equity must come with clean hands. Thus, the appellees' intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities, as the district court did in this case.
>
> [I]t is clear that appellees Lederer and Artbag intentionally copied Hermès' designs and sought to sell knockoffs of Hermès originals. Appellees thus intentionally traded off the Hermès name

and protected products and should not have been entitled to invoke the doctrine of laches as a defense against Hermès claims for injunctive relief.

219 F.3d at 107 (citations and internal quotation marks omitted).

However, when the Second Circuit turned its attention in *Hermes* to the plaintiff's claims for monetary damages, it did not regard the defendants' unclean hands as a counterdefense to their defense of laches. The district court's holding that laches barred plaintiff's claims for monetary relief was reversed in part, but on an entirely different basis. The district court had found that "laches precluded recovery for seven different allegedly infringing products sold by [defendant] Artbag." *Id.* at 109. Hermes successfully argued on appeal that "with respect to Artbag, the laches defense should have applied to only one product, the Kelly bag, and should not have been applied to six other products," because "there is no evidence in the record to suggest that it knew that Artbag was selling knockoff copies of those six products, and thus as a matter of law Artbag could not meet its burden of proving that Hermès unreasonably delayed taking action against Artbag for selling allegedly infringing products." *Id*. The Second Circuit accepted that contention:

> Hermès knew of *Lederer's* sales of seven knockoff products for at least nine years prior to commencing suit, but that Hermès was aware of only one knockoff product being sold by Artbag—the Kelly bag. The district court, however, failed to distinguish between Lederer and Artbag in holding that laches prevented recovery against both companies for all seven products. Because there is no evidence that Hermès knew of Artbag's sales of knockoffs other than the Kelly bag prior to 1996, we find that the district court's grant of summary judgment with regard to monetary relief against Artbag should have applied only to the Kelly bag.

*Id.* (internal citation omitted).

For present purposes, a notable feature of this Second Circuit decision is that while the

cleanliness *vel non* of defendant Artbag's hands is exactly the same, whether one is considering plaintiff's entitlement to injunctive or monetary relief, unclean hands preclude defendant from asserting the laches defense against plaintiff's claim for injunctive relief, but have no effect upon laches barring a claim for monetary relief if defendant can prove the recognized elements of laches – unreasonable delay by plaintiff in suing and resulting prejudice to defendant. These considerations are implicated in the case at bar, since CSL seeks both injunctive and monetary relief, and Midsun contends *inter alia* that the doctrine of laches bars all of CSL's claims.

A number of governing principles may be gleaned from appellate cases. "Laches is an equitable defense." *Federal Treasury Enterprise*, 809 F.3d at 745. "The ultimate determination of whether laches bars a plaintiff's claim is within the trial court's discretion." *Id*. at 746. A presumption of laches exists in this case because CSL did not file its action against Midsun until after the analogous state statute of limitations had run. Consequently, CSL has the burden of showing that laches should not apply. It is open to CSL, in that regard, to contend that Midsun committed intentional infringements of CSL's marks which trigger the clean hands doctrine and preclude application of the laches doctrine, at least in respect of CSL's claims for injunctive relief. Under the maxim, "he who comes into equity must come with clean hands," a court of equity may decline to exercise its equitable powers in favor of a party whose "unconscionable act . . . has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). A contention of unclean hands, equitable in nature, is also addressed to the discretion of trial judges sitting in equity, who consider what makes "for the advancement of right and justice" and "are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Id.* at 245-46.

13

In a case where the elements of the defense of laches are proven, or the presumption of laches is not rebutted, and there is no impediment to the application of laches, a plaintiff's legal and equitable claims may be dismissed in their entirety. That is what Midsun says should happen in this case. CSL disputes the proposition.

By means of this Memorandum, the Court *sua sponte* poses this question: Should Midsun's defense of laches be bifurcated and tried first before the Court? Rule 42(b) gives the Court discretion to order a separate and initial trial of that issue, subject to the instruction in the last sentence of the Rule that "when ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). The case at bar pits CSL's legal Lanham Act claims (where a right to a jury exists) against Midsun's equitable defense of laches (where it does not). *Moore*'s treatise and the cases it cites take the position that if there are no "common issues" between the legal and equitable claims in a particular case, the concern expressed by the last sentence of Rule 42(b) does not arise. If there are common issues between legal and equitable claims, the resulting concern is identified by *Moore's* as one of possible "infringement on the right to jury trial by the collateral estoppel or res judicata effect of a court determination of the equitable claims." Given these considerations, the question posed by this case can be rephrased: Would an order by the Court for a separate trial and initial trial of Midsun's laches defense be impermissible as violating the final sentence of Rule 42(b)? That question is worth posing, because conceptually (and without intimating any view on the merits) a decision after bench trial that Midsun's laches defense succeeds would avoid the expenditure of considerable trial resources ("expedite and economize" are two praiseworthy objectives identified by Rule 42(b)).

Other questions arising out of these circumstances will undoubtedly occur to counsel. I

conclude for the present that the underlying question of proper trial court governance is an important one, and must be resolved before the case can proceed, but the question has not been sufficiently addressed by the briefs and submissions of counsel to date.  For example, CSL's latest reply brief on the subject of a phased trial argues that Midsun's alleged willful infringement is an element of CSL's claim for actual damages, and is implicated by the *Polaroid* "good faith" factor, and CSL's right to a jury trial on that issue should not be abrogated.  Doc. 306-1. The brief is cogently written, but falls somewhat short of addressing, among other questions, whether these legal issues are "common" to the issues presented by Midsun's equitable laches defense, so that a constitutional (Seventh Amendment) concern arises of the sort recognized by the phrasing of Rule 42(b).

My direction is that the issues and questions discussed in this Memorandum be further briefed by counsel, and the Court will then hear oral argument on the question of structuring the trial. The hearing for that argument will take place at **10:30 a.m. on September 26, 2018**, in the 17th Floor Courtroom at 157 Church Street, New Haven, Connecticut.  Counsel should exchange and file main briefs on or before **September 17, 2018**, and exchange and file reply briefs not later than **September 24, 2018.**

It is SO ORDERED.

Dated:  New Haven, Connecticut

August 3, 2018


 */s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge